**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CHARLES SANDERS and PHILLIP
MOORE,
                           **Plaintiffs,**

-vs-                                     **Case No.  6:06-cv-1216-Orl-28GJK**

DRAINFIELD DOCTOR, INC.,
                           **Defendant.**
_____

**MEMORANDUM OF DECISION**

The Court held a bench trial in this case on July 9, 2008.  Based on the testimony of the witnesses, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).

I.  Background

Plaintiffs worked for Defendant as septic system and drainfield installers.  Plaintiffs filed this lawsuit, claiming that they frequently worked more than forty hours per week for Defendant but were not paid overtime in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").

It is undisputed that Defendant paid Plaintiffs a daily rate without regard to the number of hours worked in that day.  It is also undisputed that for work on Saturdays, Defendant paid Plaintiffs one and a half times their weekday rate regardless of how many hours they worked on that Saturday.  The Department of Labor regulation pertaining to computation of the "regular rate" for day-rate employees provides:

       If the employee is paid a flat sum for a day's work or for doing a

particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. **He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.**

29 C.F.R. § 778.112 (emphasis added).  Hence, under this regulation, Plaintiffs were entitled to an extra half-time pay for hours beyond forty in a week.  It is undisputed that if the Plaintiffs worked in excess of forty hours during weekdays (without working Saturdays) they did not receive extra compensation for the excess hours.

Prior to trial, the parties reached an agreement regarding the amount of overtime owed to each Plaintiff – $1,032.56 to Plaintiff Sanders and $1,868.79 to Plaintiff Moore.  This agreement left the matter of Plaintiffs' entitlement to liquidated damages as the only issue for trial.

The FLSA provides generally that an employer who violates the overtime provisions of the FLSA "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216]." 29 U.S.C. § 260.  Thus, Defendant bore the burden of establishing at trial that it acted in good faith in its pay methods.

-2-

II.  Trial Testimony

In its case-in-chief, Defendant presented the testimony of only one witness – one of its owners, Frank Cervasio. Mr. Cervasio testified that when he hired Plaintiffs, he informed them that they would paid a "day rate" regardless of how many hours they worked that particular day.  Mr. Cervasio explained that he paid his employees a "day rate" because the drainfield business is largely dependent on the weather; when it rains, a job can be totally called off.  Mr. Cervasio also told Plaintiffs that if they worked on a Saturday they would be paid their day rate plus an additional half of that day rate.

When asked what he did to determine whether his pay system was valid, Mr. Cervasio testified that when he started the business in 2000, he visited the webpages of the Florida Department of Labor and the United States Department of Labor.  Mr. Cervasio read approximately twelve to fifteen pages of material from these Departments of Labor.  From those webpages, Mr. Cervasio ascertained that it was permissible to pay his employees a day rate.  Mr. Cervasio was unaware of any regulation requiring him to use any specific formula or to pay his employees in any particular way.  Mr. Cervasio did not recall seeing a formula for how to calculate overtime for employees who are paid a day rate.  Mr. Cervasio did not contact a CPA or an attorney prior to deciding on the pay arrangement.

Mr. Cervasio acknowledged that under Defendant's pay structure, if an employee worked more than forty hours Monday through Friday and did not work Saturday, the employee received only five times the day rate and did not receive any overtime pay.  Mr. Cervasio explained that Defendant relied on Paychex for matters pertaining to payroll, including the issuance of payroll checks, and has done so since 2000.  Mr. Cervasio did not

consult with anyone at Paychex regarding overtime pay.  Mr. Cervasio denied that either Plaintiff ever complained to him about overtime.

Plaintiffs' witnesses were Plaintiffs themselves and Defendant's other owner, Mary Ann Cervasio.  Plaintiff Sanders testified that Mr. Cervasio told him he would be paid a day rate for weekdays and a day rate plus a half for work on Saturdays.  Mr. Sanders testified that he complained to Mr. Cervasio about the way he was paid; in response, Mr. Cervasio told him that he was being paid the day rate.  Mr. Sanders contacted the labor board and told Mr. Cervasio that there was no such thing as a day rate; Mr. Cervasio told him that was not true.  Mr. Sanders estimated that he worked fifty to sixty hours per week, and the hours varied.  He did not receive any additional pay when he worked more than forty hours during weekdays.  Mr. Sanders acknowledged that he worked fewer than forty hours during some weeks, and he was paid a full day rate even when he did not work a whole day.

Plaintiff Moore testified that when he worked more than forty hours during the weekday workweek, he did not receive additional pay.  During some weeks he worked fewer than forty hours; when he did, he still received his full daily rate for each day worked.

Mary Ann Cervasio – Mr. Cervasio's wife and the president and sixty percent owner of the business – testified that she was in charge of the payroll duties at the business.  In that role, she compiled the employees' pay information and submitted it to Paychex.  Mrs. Cervasio did not herself contact the Department of Labor to determine whether Defendant's pay methods were in compliance with the FLSA.  She did not consult an attorney or labor consultant either.  Mrs. Cervasio relied on her husband regarding how to pay the employees.

Upon questioning by the Court, Mr. Cervasio testified that he has a high school

education and has owned a number of businesses.  When he contracted with Paychex to handle the payroll for Defendant, he explained Defendant's pay plan to Paychex.  Mrs. Cervasio explained that she has a ninth-grade education and has worked as a typist, a bank teller, a ticket salesperson, an office manager for a plumbing company, and in other businesses with her husband.

## III.  Findings of Fact

The trial testimony was straightforward.  Mr. Cervasio explained that he did make some efforts to determine how to pay his employees.  He visited Department of Labor websites but did not consult an attorney, accountant, or labor consultant.  He denied that any of his employees ever complained to him about overtime.  And, although Plaintiff Sanders claims that he did complain, what Plaintiff Sanders told Mr. Cervasio after Sanders contacted the labor board was that "there is no such thing as a day rate" – a statement that Plaintiffs' counsel concedes is not correct as a matter of law and which does not plainly pertain to overtime.  Therefore, there is no credible evidence that any employee ever complained to Defendant about overtime or alerted it to the possibility that its pay practices were not in accordance with the FLSA.  Moreover, by all accounts, Defendant paid its employees one and a half times the regular day rate when they worked on Saturdays.

## IV.  Conclusions of Law

As stated earlier, "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the failure to pay overtime] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA],

the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216]."  29 U.S.C. § 260.  "To satisfy the good faith requirement, an employer must show that it acted with both objective and subjective good faith."  Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1272 (11th Cir. 2008).

Based on the testimony at trial, the Court is satisfied that Defendant acted in good faith and with reasonable grounds to believe that it was complying with the FLSA in its pay practices.  Although Mr. Cervasio certainly could have done more to determine whether Defendant's practices were legally sufficient, he did consult the Department of Labor's website with regard to the permissibility of paying a day rate.  He did not uncover any information about overtime requirements, but Defendant did pay its workers a day rate plus a half for work on Saturdays.

Defendant's pay structure sometimes resulted in overpayment of its workers – that is, Defendant sometimes paid its workers more that it was legally obligated to pay.  On the other hand, of course, in weeks where an employee worked more than forty hours on weekdays and did not work on Saturdays, they did not receive all the compensation to which they were entitled; they should have been paid an additional half-rate for their excess hours over forty.  However, this circumstance does not diminish the fact that efforts were made – in what is essentially a "mom-and-pop" business – to comply with the law.  Additionally, the overtime "formula" for day rate workers is buried in a Department of Labor regulation, and

the overtime payment scenario created by day rates along with "Saturday premiums"[1] is a complicated one even for attorneys and the Court, let alone for a layperson.  Considering all of these circumstances, Defendant acted in good faith.  This is not the typical case where an employer pays no overtime or makes no effort to pay overtime at all.

In sum, the evidence presented at trial – especially Defendant's obvious efforts to pay overtime – demonstrates that Defendant made good faith efforts to avoid violating the FLSA.  Thus, an award of liquidated damages is not warranted in this case.

## V.  Conclusion

In accordance with the parties' pretrial stipulation as to damages and the Court's ruling on the good faith issue, the Court renders verdicts in favor of Plaintiffs against Defendants as follows: for Plaintiff Charles Sanders, $1,032.56; and for Plaintiff Phillip Moore, $1,868.79.  The Clerk of the Court is directed to enter judgment for Plaintiffs in these amounts and, thereafter, to close the file.  The Court retains jurisdiction with regard to attorney's fees, which may be sought, if appropriate, in accordance with Local Rule 4.18.

**DONE** and **ORDERED** in Orlando, Florida this 7th day of August, 2008.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

---

[1]See 29 C.F.R. § 778.203.